UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANIEL HALL,

           Plaintiff,                        Case No. 1:11-cv-1229

v.                                                 Honorable Robert J. Jonker

ABIGAIL CALLEJAS et al.,

           Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the full filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    Factual allegations

Plaintiff Daniel Hall presently is incarcerated at the Carson City Correctional Facility (DRF). Plaintiff was found guilty in Kent County Circuit Court of two counts of first-degree

criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520b. In 1992, Plaintiff was sentenced to prison terms of 20 to 40 years for each count.[1] In his *pro se* complaint, Plaintiff sues the following Defendants: Michigan Parole Board members Abigail Callejas and Charles Brown, and a psychologist at DRF, Dr. Robert Murrell.

Plaintiff's complaint, titled a "MOTION FOR 42 U.S.C.A. §1983," concerns his denial of parole in 2011 and his inability to participate in a therapy program that would aid his eligibility for parole. Plaintiff contends that Defendant Murrell prevented him from participating in the MDOC's sex offender therapy (SOT) program, and that Defendants Callejas and Brown denied him parole, in each case, because Plaintiff would not admit responsibility for his CSC convictions. As part of the SOT program, a participant must admit full responsibility for his convictions. If Plaintiff does not complete the SOT program or admit responsibility for his crimes, Defendants will not release Plaintiff on parole.

According to the complaint, Plaintiff started attending the SOT program in 2005 under the supervision of Dr. Murrell. Thirteen weeks into the program, Dr. Murrell terminated Plaintiff's participation in the SOT. Dr. Murrell noted in his termination report:

> At the start of group therapy, Mr. Hall reported he has never committed a sexual offense. He claimed no responsibility for the commission of the instant offense. This clinician spoke with Mr. Hall in order to remind him that group therapy for sexual offenders provides sexual offenders an opportunity [to] examine and learn about their sexually offending behavior. It was discussed thoroughly that part of the program's requirement for each member is to discuss and examine their own sexual offense honestly in the group therapy setting. Mr. Hall reported he understood that and was aware that was part of the sexual offender group therapy program as discussed at the

---

[1] The Court obtained information regarding Plaintiff's convictions and sentences from the MDOC Offender Tracking Information System website at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=207899.

>  beginning of group therapy. However, Mr. Hall has continued to report he has never committed a sexual offense and he is not a sexual offender. This was disruptive to the process of group therapy and a violation of the group therapy rules. As such, Mr. Hall has been terminated from group therapy without completion of group therapy.

(Compl., Ex. B, MDOC Therapy Termination Rep., docket #1-2, Page ID#26.)

In 2006, 2008, 2009 and 2010, Plaintiff was interviewed by representatives of the Michigan Parole Board. At each interview, Plaintiff accepted full responsibility for his past actions, but maintained his innocence with respect to the CSC convictions. After each interview, Plaintiff received continuances of consideration for parole.

On September 7, 2011, Plaintiff again was interviewed regarding the possibility of parole. Defendant Callejas told Plaintiff that parole would not be possible without the benefit of group therapy through the SOT program. Plaintiff responded that Defendant was denying Plaintiff his First Amendment rights. A few days later, Defendants Callejas and Brown signed an order denying parole and continuing Plaintiff's parole hearing for 18 months. In its Notice of Decision, the parole board noted that Plaintiff "denies the offense," and that "[Plaintiff] has not taken the necessary programs that are designed to help [Plaintiff] gain the tools he needs to help reduce his risk." (Compl., Ex. A, Notice of Decision, docket #1-1, Page ID##13-14.) The board recommended that Plaintiff comply with "psychological screening and/or therapeutic programming when referred." (*Id.* at Page ID#14.)

Plaintiff claims that the requirement to admit guilt in order to participate in the SOT program or in order to be released on parole violates his right to freedom of speech under the First Amendment and his right to due process under the Fourteenth Amendment. (Compl., docket #1, Page ID#1.)

For relief, Plaintiff seeks: (1) a declaratory judgment regarding the violations of his constitutional rights; (2) immediate release from custody; (3) an injunction prohibiting the MDOC from depriving him of disciplinary credits in retaliation for his lawsuit; (4) an injunction prohibiting the MDOC from transferring Plaintiff to another facility while this action is pending; and (5) a declaratory judgment "stipulating the differentiation between recommend and required to further establish the proper methods of parole decisions." (Compl., docket #1, Page ID#11.)

### II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A challenge to the fact or duration of confinement ordinarily should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

To the extent Plaintiff requests release from prison, that relief is not available in a § 1983 action. *See Preiser*, 411 U.S. at 484. Moreover, to the extent Plaintiff contends that Defendants Callejas and Brown denied him parole in violation of his constitutional rights and that he is, therefore, entitled to release, his action is *Heck*-barred. *See Wilkinson*, 544 U.S. at 81-82.

To the extent Plaintiff contends that he was prevented from participating in the SOT program, however, success in the action would not necessarily demonstrate the invalidity of his continued confinement and would not be *Heck*-barred. But even if Plaintiff's action is not barred, it fails to state a claim for the reasons set forth herein.

### A. Procedural Due Process

Plaintiff claims that Defendants Callejas and Brown violated his right to procedural due process by denying parole on the basis that Plaintiff did not complete the SOT program and/or would not accept responsibility for his crimes. Plaintiff contends that the parole board should have taken into consideration his low probability for recidivism and violence, as determined by a 2009 COMPAS[2] evaluation. (*See* Ex. C, docket #1-3, Page ID#29.) To establish a procedural due process violation, a plaintiff must prove (1) that he was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart*

---

[2]"COMPAS is a statistically based risk assessment specifically designed to assess key risk and needs factors in correctional populations and to provide decision-support for justice professionals when placing offenders into the community." *See* Description of COMPAS Core Software Suite, http://www.northpointeinc.com/compas-core.aspx (last visited Dec. 1, 2011).

*v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole or in participating in the SOT program. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. *Id.* at 1164-165. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See, e.g. Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Therefore, the Michigan Parole Board's denial of, or refusal to consider Plaintiff for, parole implicates no federal right to due process.

Plaintiff's termination from the SOT program also fails to state a claim. Plaintiff does not have a federally cognizable liberty interest in participating in any rehabilitative program, much less the SOT program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). In the absence of a constitutionally-protected liberty interest in release on parole or in participation in the SOT program, therefore, Plaintiff cannot state a procedural due process claim.

### B.     First Amendment

Plaintiff further claims that it is a violation of his First Amendment right to freedom of speech to require him to admit his responsibility for his CSC offense as a condition for participation in the SOT program and/or release on parole. The First Amendment ordinarily prevents the state from "inquir[ing] about a man's views or associations solely for the purpose of withholding

a right or benefit because of what he believes." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 7 (1971). It protects both the right to speak freely and the right not to speak at all. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). As the Supreme Court repeatedly has recognized, however, the fact of incarceration necessarily imposes "limitations on constitutional rights, including those derived from the First Amendment[.]" *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). A prisoner retains only those First Amendment rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780 (6th Cir. Nov. 4, 1999), the Sixth Circuit affirmed the dismissal of a First Amendment claim similar to Plaintiff's, stating that "the parole board's consideration of a prisoner's willingness to accept responsibility for committing a crime" survives First Amendment scrutiny because "it does not force [the prisoner] to admit his guilt. [The prisoner] is free to maintain his innocence." *Id.* at *2. Moreover, acceptance of responsibility for committing a crime is "reasonably related to a legitimate penological interest, rehabilitation . . . ." *Id.*

The Third Circuit recently addressed the issue in more detail, in *Newman v. Beard*, 617 F.3d 775 (3d Cir. 2010). In *Newman*, the prisoner argued that the parole board's requirement that he admit guilt violated his First Amendment rights. The court affirmed the dismissal of the prisoner's claim because he could not show that the state's policy would fail under the *Turner* test; that is, he could not show that the policy did not serve legitimate penological objectives or is not

reasonably related to rehabilitation. *See id.* at 781.  The court noted that the Supreme Court has recognized that "States . . . have a vital interest in rehabilitating convicted sex offenders" and "acceptance of responsibility for past offenses" is a "critical first step" in a prison's rehabilitation program for such offenders, *McKune v. Lile*, 536 U.S. 24, 33 (2002) (plurality opinion).[3]  Similarly, Plaintiff cannot show that Defendants' requirement that he accept responsibility for his CSC conviction fails the *Turner* test.  As *McKune* and *Newman* indicate, the policy of requiring a sex offender to accept responsibility for his sex offenses survives First Amendment scrutiny because it is reasonably related to a legitimate penological interest.

Plaintiff contends that because he is innocent, the requirement to admit guilt would not be relevant for his rehabilitation, citing *King v. Davis*, 688 F. Supp. 2d 689 (E.D. Mich. 2009), in support of his claim.  In *King*, the district court held that a similar First Amendment claim had "arguable merit" because "having to admit guilt in order to participate in sex offender therapy is not a voluntary decision, given the consequences of not doing so."  *Id.* at 691-92.  The court noted that the state may not condition a benefit on the waiver of constitutionally protected rights.  *Id.* at 692

---

[3] Justice Kennedy wrote the plurality opinion in *McKune*, joined by Justices Rehnquist, Scalia and Thomas. The dissenting opinion written by Justice Stevens, which was joined by Justices Souter, Ginsburg and Breyer, is not to the contrary on this point.  The dissent states:

> The [Sexual Abuse Treatment Program] *clearly serves legitimate therapeutic purposes*. The goal of the program is to rehabilitate sex offenders, and the requirement that participants complete admission of responsibility and sexual history forms may well be an important component of that process. *Mental health professionals seem to agree that accepting responsibility for past sexual misconduct is often essential to successful treatment, and that treatment programs can reduce the risk of recidivism by sex offenders*. See Winn, Strategic and Systematic Management of Denial in Cognitive/Behavioral Treatment of Sexual Offenders, 8 Sexual Abuse: J. Research and Treatment 25, 26-27 (1996).

*McKune*, 536 U.S. at 68 (emphasis added).

(citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The court reasoned that "false admission of guilt surely would not facilitate the penological goal of rehabilitation," and noted that "there is some disagreement as to whether an inmate's admission of guilt leads to rehabilitation." *Id*. (citing Michigan Public Policy Update, Vol. 6, Issue 47 (Nov. 17-23, 2008), which states that a "prisoner's assertion of innocence should not, standing alone, be a basis for denying parole," because "[t]here is not objective verifiable evidence that an 'assertion of innocence' by an inmate increases the likelihood of recidivism").

The reasoning in *King v. Davis* is not persuasive. Even if an *assertion of innocence* does not increase the likelihood of recidivism for inmates generally, the majority of justices of the Supreme Court recognized, in *McKune*, that *acceptance of responsibility* for a *sex offense* serves legitimate penological purposes. Moreover, though Plaintiff contends that he is innocent of the CSC charge, he was found guilty of that offense. Accordingly, the state may treat him as guilty when making parole determinations, and it has no further burden of proving his guilt in order to demonstrate that acceptance of responsibility for that crime serves a legitimate penological interest. *See Newman,* 617 F.3d at 781. For the foregoing reasons, therefore, the Court follows the reasoning in *Hawkins* and *Newman* and holds that Plaintiff does not state a First Amendment claim.

### C. Declaratory Judgment

Plaintiff requests a declaratory judgment regarding the terms "recommend" and "required" in the parole process. Plaintiff's allegations in support of this request are somewhat vague. Apparently, he contends that Michigan law requires that prisoners be evaluated and given programming recommendations for increasing their probability of parole. The parole board, however, applies these recommendations as requirements, denying parole to sex offenders who do

not complete the recommended programming. Plaintiff's allegations in support of his request for a declaratory judgment are too vague state a recognizable claim against Defendants. They fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, it appears that Plaintiff is challenging the parole board's application of state law. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Thus, his request for a declaratory relief must be denied because it is not based on a cognizable § 1983 claim.

### III. Pending Motions

Plaintiff requests preliminary injunctive relief in his complaint (*see* docket #1), and he also has filed a motion for discovery (docket #2). Because the Court will dismiss Plaintiff's action for failure to state a claim, Plaintiff's motion for discovery and request for preliminary injunctive relief will be denied as moot.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A and 42 U.S. C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated:     December 27, 2011            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE